Appeal No. 23-1727, the United States v. Davey Hines. Ms. Winslow, just hold on one second. We might have some folks coming in from the hall, but you can stay there. I don't know if there's any room for them. Yeah, maybe. We'll see. Okay, whenever you're ready. Good morning, Your Honors. May it please the Court and Counsel, on behalf of Appellant Davey Hines, the District Court erred in imposing a four-level enhancement for being an organizer or leader on the facts before it. This case involved 11 individuals who came together to accomplish a criminal goal. Mr. Hines pleaded guilty, and he asked nothing more than to be sentenced to a fair sentence. The District Court, despite the evidence before it, imposed a four-level enhancement under the guidelines for being an organizer or leader. The government, in its response, asked this Court to examine the entire universe of organizer-leader law. But we, in this case, are essentially confined to the facts that were presented and found by the District Court, so I'd like to address those specifically. The District Court essentially found three facts which supported its decision. First, that Mr. Hines recruited letter carriers. Second, that he decided what to pay them. And third, that he, in fact, was the person who paid the letter carriers. With respect to the recruitment, the government relies in large part on its government's version, in which it states that the individuals were recruited. That's a self-serving term. That was a self-serving document, just in the same way that a defendant's sentencing memorandum is a self-serving document. And it's up for the court to decide, the District Court to decide, whether or not the recruitment was a mere invitation, such as discussed in United States v. Weaver, or whether it was an actual recruitment. In this case, there's no evidence that there was anything other than an invitation presented to the individuals who participated in the scheme. There is no recruitment. It was simply an invitation. An invitation to postal carriers to steal credit cards out of the mail. That is correct. So aren't we just kind of mincing words a little bit, that if you say you want to make some money on the side by stealing credit cards out of the mail? Correct. I mean, why isn't that considered recruitment? Because they had every opportunity to say no. And some of them came to him and asked him, what do you do for money? Oh, sure, but where have we ever said that recruitment is defined as a compelled choice? Well, Judge, I think Weaver needs to be clarified in that regard. Because recruitment and invitation are two very, very similar concepts. And I don't think there's really any definition between the two cases or between the two instances, and perhaps that's something that this court can resolve in this instance. How did Mr. Hines answer that question? What do you do for a living? White-collar stuff. White-collar stuff? White-collar stuff. He admitted to being a criminal. Nobody in this court is in favor of crime, Judge. And nobody's acknowledging that what he did was somehow not a crime. The question is whether or not he should have been assessed the additional four levels enhancement. Okay? So I want to go back to this notion that it was simply an invitation and not recruitment. Yes, Judge. All right, so the question is, what do you do? White-collar crime. And then if there's a payment as far as if you're not recruiting you, I'm not paying you, but was there, I thought there was a finding that he, Mr. Hines, was in control of how much the recruited members or the members in the received for the work that they did. You are correct in that, but I will add this. Okay. There would be no money. Mr. Hines monetized the scheme. So he made purchases with the stolen credit cards and therefore monetized the scheme. There's no indication that there was any negotiation about fees. He said, I'll pay you this much for that, and they said, great. Nobody came to him and said, I want to be paid more, or I want to be paid less, or I want to be paid more often, or on a different scale. It was simply an agreement between the parties. There was no negotiation. None was attempted. Had there been an attempted negotiation, had one of the co-defendants said, I want to make more money off of this, and he said, no, you're going to get what I pay you, we might have a different case here, but that's not the facts. Those are not the facts before the district court. In addition, Mr. Hines took the lion's share of the risk because he was the person who went into the store with the stolen credit cards and made the purchases. Because he monetized it in that way, he was the one who took the risk and ultimately for that reason took the lion's share of the money. Did he do any directing after the postal employees were invited to the scheme? Did he do any directing of those employees? Upon request. If they asked him, is this mail good, is that mail good, should I take this, he would respond to them. Yes, upon request. And finally, again, to reiterate, Mr. Hines paid the co-conspirators because he, again, was the person who monetized this scheme. Now, he wasn't the person who was in charge of it, for sure. Mr. Johnson was the person who got the personal identification information. He was the one who made the scheme possible. Judge, if there's no other questions, I will reserve the remainder of my time for rebuttal. Yes, that's fine, Ms. Beasley. Thank you. Okay, we'll hear from Ms. Thomas. Good morning, Your Honors. May it please the Court, my name is Leanne Thomas and I represent the United States. This Court should affirm Defendant Hines' sentence as the District Court correctly found that Defendant Hines was a leader or organizer under the enhancement. Defendant Hines, as counsel stated, monetized this scheme. This mail theft conspiracy would not have been possible or profitable without Defendant Hines, as the record shows that every aspect of the scheme flowed through him. To summarize the scheme, there were three categories of people. The six letter carriers who actually stole the mail, the four non-postal employees, two of which had access to personal information, two didn't, and then Defendant Hines, who was separate and apart. And the way the scheme worked was the letter carriers stole the mail, they would send it by photo, Snapchat, text, or physically deliver it to Defendant Hines. Defendant Hines would then send that on to the two with access to personal information. That personal information would flow back to Defendant Hines and then Defendant Hines would either filter it to others or himself use to activate and use the cards for fraudulent purposes. So that's how the scheme worked and every factor in the commentary supports the application of the enhancement. What do we do with the argument that counsel has made regarding Weaver and whether or not Weaver limited the ability of the district court to impose this four-level enhancement without demonstrating Hines' control of, as she described it, as the head of the scheme? Your Honor, this case is factually distinguishable from Weaver. In Weaver, that was a drug conspiracy case in which the court found that the defendant simply fronted drugs to others, essentially acting as in a buyer-seller relationship. This wasn't like that. Unlike the defendant in Weaver, this defendant did exercise some control over the others in the scheme. For example, as already discussed, he did recruit three of the six letter carriers. That record reflects that the memorandum of interview will show that two of them were recruited by social media and one was recruited in person by defendant, and the discussion of what he does for a living was a part of that. For the letter carriers, as already discussed, he directed them. He instructed them which cards to steal, which ones were more profitable. For example, he wanted ones that had a higher credit card limit. On one occasion, when one of the letter carriers showed or told him that she only got one or two, he told her that her output was terrible and arranged to meet with her within a few days to help her increase her output and the utility to the scheme. For the same person, when she expressed hesitation in continuing her involvement in the scheme because the male associated with the person he wanted her to steal from was an elderly person and expressed that hesitation, he cajoled her into continuing and met with her shortly thereafter. So there is evidence of control, and it's unlike Weaver because he did recruit, he just determined how much and when they were paid, and he was actively involved in each step of the conspiracy because, but for him, this could not have existed because he connected these stolen cards with the personal information. Do you read Weaver to say that there must always be a showing of control, and if there's no showing of control, there cannot possibly be an organizer-leader enhancement? The government does not read it that way, and this court expressly distinguished Weaver in the case law cited by the government in the United States versus R.O. Yo-Yo Hay, and in that case, which is quite similar to the one at Barr, involved identity theft and bank fraud where an individual, along with co-defendants, was stealing personal information to activate bank accounts and other things. This court distinguished the Weaver case and expressly stated that there was no need for an express finding of control. The case law in this court, the commentary, does not state that any factor under the commentary is a prerequisite to imposing. The only reason, to my eye, the only reason in Weaver we spent so much time talking about control was because the first of the several factors in 3B1.1 was at issue, decision-making authority, and we were trying to give content to what decision-making authority is, and the synonym we picked was control, and so we talked about it a lot, but I don't see anything in there that says that the first factor among the, what, seven that are listed there, it has to be present in all cases for there to be the four-level enhancement. I don't see where we said that. The government agrees, Your Honor. So we've already discussed that he recruited all, or three of the others. That supports one factor. We already discussed that he exercised significant decision-making, directing their ongoing activity, and he decided how much, after he obtained personal information, how much to filter to the others. So the other two non-postal workers, co-defendants, were also dependent on him, even though they didn't have direct access to Johnson. He claimed a larger share, as the district court concluded on a per-card basis, because the scheme involved more than 450 cards, over $460,000 in losses, and their letter carriers reported only receiving $100 per successfully used card. With the argument that he monetized the scheme, in essence, is the government's position that Mr. Hines was the conduit? Yes, absolutely, Your Honor. Yeah, or as the district court found, the organizer.  The one who brought all the pieces together to allow the fraud to be successful. Correct, Your Honors. This scheme could not have existed without Defendant Hines. Counsel mentioned that it could not have existed without Johnson. It could have existed with Johnson, but not Defendant Hines, and that is incorrect, because Defendant Hines was the conduit to receiving the mail, which then was connected with the personal information, and for those reasons, the government believes that the court should affirm Defendant Hines' insistence, as the district court correctly concluded that the defendant was a leader or organizer under the enhancement. Okay, thank you, Ms. Thomas. Ms. Winslow, you're welcome to use the remaining time for rebuttal. I appreciate the government's characterization of this case, because I think it really sets it out more clearly. The postal workers were in charge of stealing the mail. Mr. Harris was the conduit between the postal workers and Mr. Johnson. Mr. Johnson provided the personal identification information. None of this scheme could have occurred without each of them in their roles. They each played their role, and the role that they played was equivalent. Again, Mr. Hines received more money because he monetized the scheme. I don't think we know, and it's certainly not in the record before this court on this case, I don't think we know what Mr. Johnson earned out of this scheme, but none of them could have operated without another. They each played a role. It was equally important. The scheme would not and could not have existed without the involvement of each of the three groups. The government brings up Orojo Joy, which I think is how you pronounce it, and I'm glad that they did. That case was essentially conceded and decided on a clear error basis. I don't think it's persuasive. I don't think it provides much context or information for this court in this particular case. What do we do with U.S. v. State, though? That's U.S. v. State, where it says Weaver does not limit the adjustment to situations where there has to be a finding of control. That's just one measure. Judging, you're absolutely correct, and the commentary in all of the cases that discuss the commentary, which, with all due respect to the Sentencing Commission, is not terrifically helpful, to be honest. And no one factor is controlling. So the ultimate determination is a common-sense finding as to who was really the organizer or leader in this case. There's not one particular factor. So that's why when you look at this case and you look at the 11 individuals who were involved, each playing their individual and important role, there's no one person who's leading or organizing. Again, I believe it was Your Honor's question when you asked were they given guidance as to what mail to steal. Upon request, they were. Yeah, I mean, I think the tough part of the hand you've been dealt here is all the arguments you're making are ones that were very understandably made to the district court judge, Judge Chain, in this particular case. He heard him, he considered him, he made findings that are adverse to Mr. Hines on this, and you have to persuade us, you have to leave us with a definite and firm conviction that those findings are erroneous. Judge, I would ask that you look at the record. I'm sure you have. But rereading the transcript, as I've done, you know, a couple hundred times at this juncture, I don't see where those findings of fact were made clearly enough in this case. I have a great deal of respect for Judge Chain. Always have, as a prosecutor and as a judge. But I don't think that his findings in this case were clear enough to support the imposition of a four-level enhancement. Okay, very well. We'll take a look at it. We appreciate it very much. Thanks to the government as well. Thank you, Your Honor. Take DPL under advisement. You're welcome.